IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GLADDEN VELEZ,

    Plaintiff,

     v.                          CIVIL NO. 03-1079 (RLA)

JANSSEN ORTHO LLC,

    Defendant.

## OPINION AND ORDER

The Court has before it defendant JANSSEN ORTHO LLC's (JANSSEN) Motion for Summary Judgment (**docket No. 38**), which plaintiff GLADDEN VELEZ (VELEZ) has duly opposed (**docket Nos. 44** and 46). See also JANSSEN's reply (docket No. 49).

### FACTUAL BACKGROUND

On August 7, 1989, VELEZ began working for JANSSEN, in its Gurabo, Puerto Rico, Chemical Plant. Years later, in June of 1997, she filed a first complaint before the Puerto Rico Court of First Instance, Caguas Part, ("the Caguas Court") alleging sexual harassment and retaliation for allegedly reporting manufacturing irregularities.

On November 2, 1998, VELEZ requested a transfer to the position of Senior Packaging Engineer. JANSSEN denied her request on December 10, 1998, on the basis that she lacked the requisite experience and academic qualifications.

On December 31, 1998, the Gurabo chemical plant closed. VELEZ received $12,704.86 in a severance package. Roughly two weeks later,

CIVIL NO. 03-1079 (RLA)                                    **Page 2**

on January 12, 1999, VELEZ amended her Caguas Court complaint to include allegations of retaliatory failure to transfer and termination.

    One month later, on February 15, 1999, VELEZ sent JANSSEN a résumé to be considered for the position of Manufacturing Supervisor. Then, on May 9, 1999, she forwarded another résumé to be considered for the position of Senior Packaging Engineer. This latter position is the same job she had applied for in November 1998, and for which she had already been found unqualified. JANSSEN did not respond to plaintiff's requests for consideration. Thus, on December 4, 2001, plaintiff filed a Second Amended Complaint in the Caguas Court, alleging, *inter alia*, that JANSSEN continued to retaliate against her because it failed to consider her or respond to her 1999 job applications.[1]

### JANSSEN's Hiring Procedures

    At the time of this last request for employment in May of 1999, CARLOS OTERO (OTERO) was JANSSEN's Human Resources and Coach Leader. Among other things, OTERO supervised the recruiting and staffing functions of the Human Resources Department at JANSSEN. OTERO's role during the hiring process was to identify open positions with the directors of each department, identify business and organizational needs, and hire the persons as needed.

---

    [1] While these employment decisions are not the subject of this complaint, they provide the relevant backdrop to the employment decision in controversy: VELEZ' August 2001 application for employment.

CIVIL NO. 03-1079 (RLA)                                          Page 3

JANSSEN's recruiting procedures require that any vacancy be posted first within the plant site, then through a JOHNSON & JOHNSON intercompany posting and, finally, that it be published to external applicants. A department's hiring manager initially sends the Human Resources Department a staffing request. Thereafter, both departments work on identifying the essential requirements for the position and Human Resources begins the process of looking for qualified candidates. Human Resources usually identifies five or six qualified candidates and schedules the corresponding interviews. The department's hiring manager then interviews the qualified candidates and decides which of the applicants it wishes to hire. Finally, OTERO verifies that there is headcount approval and, if so, makes an offer of employment.

On August 8, 2001, while employed with Bristol Myers Squibb, plaintiff sent JANSSEN's Human Resources Department a résumé and cover letter requesting to be considered for any available position and listing several generic categories. VELEZ sent her letter again on August 15, 2001, via facsimile transmission. According to defendant, plaintiff's request did not fit into the Company's recruiting procedures inasmuch as the Human Resources Department works with applications for specific positions, it does not function as a "head hunter" seeking to place a candidate. Plaintiff has offered no evidence to contest this. Furthermore, plaintiff's résumé did not specify or describe the work experience she had obtained at each position held throughout her career.

JANSSEN responded to plaintiff's generalized application through letter dated August 16, 2001, in which OTERO informed VELEZ that she would not be considered for an interview or for re-employment.  OTERO testified he opted to respond to plaintiff in writing advising her that she would not be considered for employment because she had submitted two résumés and cover letters, one via certified mail and another via facsimile transmission, and because he knew that VELEZ had filed a court case against JANSSEN.

The uncontested evidence shows that at the time of receipt of plaintiff's letters the only published vacancies were 2nd and 3rd Manufacturing Process Facilitator ("MPF") positions.  However, pursuant to the recruitment policy described above, these positions were not open to external candidates at the time of plaintiff's communication, inasmuch as JANSSEN was still in the process of offering the position to candidates within the plant site. Nonetheless, plaintiff filed a charge before the Puerto Rico Anti-discrimination Unit alleging discrimination in violation of Title VII's retaliation and because of disability in violation of the Americans with Disabilities Act ("ADA").  After obtaining a right to sue letter, she filed the present lawsuit.

Plaintiff's complaint also alleges she is disabled or, at least, perceived as such by JANSSEN, inasmuch as she suffers from a bipolar disorder and that her application for employment was also denied because of this in violation of the ADA.  Plaintiff bases her contention regarding "perceived as" disability on a conversation she

CIVIL NO. 03-1079 (RLA)                                          Page 5

alleges she held on December of 1998 with LAURA RODRIGUEZ
(RODRIGUEZ), then Human Resources Manager.

Plaintiff asserts that during that conversation, which involved
VELEZ' annual evaluation, an evaluation that yielded unsatisfactory
results, RODRIGUEZ said that she did not care if plaintiff had to
take pills. VELEZ further claims that DEAN KIMBARIS (KIMBARIS), a
supervisor at the Chemical Plant in 1998, had also mocked her by
saying "She's crazy," referring to plaintiff. However, neither of
these two persons were working with JANSSEN at the time of the
employment decision subject of this complaint.

JANSSEN contends, and the record shows, that VELEZ' medical
records' first reference to a diagnosis of bipolarity occurs on
November 12, 2002, that is, fifteen (15) months after JANSSEN's
alleged failure to hire plaintiff in August of 2001, as alleged in
the complaint. Plaintiff has failed to bring forth any evidence that
she had been diagnosed with bipolarity before that date.

The record also shows that KIMBARIS left JANSSEN the summer of
1998, before the plant closing which occurred in December of 1998.
Thus, neither KIMBARIS nor RODRIGUEZ were working at JANSSEN during
August of 2001.

VELEZ stated during her deposition that when she receives
medical attention and follows the instructions on how to handle her
condition, she can perform her duties equally or even better than any
other person without the condition. She also acknowledged that
bipolarity only affects her ability to perform activities if she is

CIVIL NO. 03-1079 (RLA)                                        Page 6

not treated, if she is not medicated, or if she does not follow the doctor's instructions, which she has been consistently doing since 1990 and up until the present time.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence before the court shows that "there is no genuine issue as to any material fact and that moving party is entitled to a judgment as a matter of law." Seaboard Sur Co. v. Town of Greenfield, 370 F.3d 215, 218 (1st Cir. 2004). When ruling on a motion for summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all *reasonable* inferences." Cox v. Hainey, 391 F.3d 25, 27 (1st Cir. 2004) (emphasis added). While carrying out this task, the Court can safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

To this end, the nonmovant "bears the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). This is the case even when elements such as motive or intent are an issue. See Santiago v. Cannon U.S.A., 138 F.3d 1, 5 (1st Cir. 1998). A plaintiff "may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." Id. It is axiomatic that a motion for summary judgment "cannot be defeated by

CIVIL NO. 03-1079 (RLA)                                              Page 7

conclusory allegations, harsh invective, empty rhetoric, strained inferences, or unsupported conjecture." Collier v. City of Chicopee, 158 F.3d 601, 604 (1st Cir. 1998). Plaintiff's subjective characterization of events is equally unavailing when the underlying events are not themselves revealed. See Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 50 (1st Cir. 1999). Finally, "[t]he mere scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### THE RETALIATION CLAIM

Pursuant to Title VII, it is unlawful "for an employer to discriminate against any of its employees or applicants for employment . . . because he [or she] has opposed any practice made an unlawful employment practice by [Title VII], or because the [her or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). See also Clark County School District v. Breeden, 532 U.S. 268, 269 (2001). Plaintiff argues that JANSSEN discriminated against her in retaliation for her having sued it in the local courts for sexual harassment and retaliation when it did not hire her as an MPF.

Plaintiff's claim of discrimination must be analyzed through the familiar lens of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996). Under McDonnell Douglas, the plaintiff bears the initial

burden of establishing a prima facie case of Title VII discrimination. See 411 U.S. at 802. The specifications of the prima facie proof vary depending on the nature of the discrimination claim. See id. at 802 n.13. With respect to retaliation claims, the prima facie model requires that plaintiff show that (1) she engaged in protected activity; (2) she experienced an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse employment action. See Calero-Cerezo v. United States DOJ, 355 F.3d 6, 25 (1st Cir. 2004); Chungchi Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003); Dressler v. Daniel, 315 F.3d 75, 78 (1st Cir. 2003); Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002); Hernández-Torres v. Intercontinental Trading, 158 F.3d 43, 46-47 (1st Cir. 1998); King v. Town of Hanover, 116 F.3d 965 (1st Cir. 1997).

For retaliation claims arising in the failure-to-hire context, it has been held that a plaintiff must "show that the position for which she applied was eliminated or not available to her because of her protected activities." Ruggles v. California Polytechnic State Univ., 797 F.2d 782, 786 (9th Cir. 1986) (emphasis added). See also Shah v. New York State Dep't of Civil Service, 2001 WL 839986 at *6 (S.D.N.Y., July 25, 2001). (Plaintiff must make a prima facie showing that "(1) she engaged in protected activities, (2) the position was eliminated as to her, and (3) the position was eliminated as to her because of the protected activities.") (Citing Ruggles, 797 F.2d at 786.)

It is the judge, not the jury, who must decide whether [a] plaintiff has satisfied the requirements of McDonnell Douglas's minimal version of a prima facie case." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (quoting Sharkey v. Lasmo, 214 F.3d 371, 374 (2d Cir. 2000)). Furthermore,"...[i]f a plaintiff fails to make it past the first stage, i.e., to aver a prima facie case, the inference of discrimination simply never arises and the employer's motion for summary judgment is granted." Ingram v. Brink's, Inc., 414 F.3d 222, 230 (1st Cir. 2005). See also Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 26 (1st Cir. 1998). JANSSEN argues in its motion that VELEZ fails with respect to the first and third elements of her prima facie case. The Court agrees and hereby FINDS that plaintiff's allegations are insufficient at the prima facie level to create a reasonable inference of retaliatory discrimination.

As discussed above, section 704(a) of Title VII prohibits employers from retaliating against employees who **oppose** unlawful employment practices or who **participate** in any manner in Title VII proceedings. See 42 U.S.C. § 2000e-3(a). The opposition clause protects a broad variety of activities which are meant to protest practices made unlawful by Title VII. In contrast, the participation clause protects from retaliation only those employees who have filed a charge, testified, assisted or participated in any manner in an investigation, proceeding, hearing or litigation under Title VII. Inasmuch as the basis of plaintiff's contentions regarding

retaliation claim stem from the lawsuit filed before the Caguas Court, her claim ostensibly falls under the coverage of Title VII's opposition claim.  This is because plaintiff's Caguas lawsuit was not brought under Title VII's civil enforcement provision and is, therefore, not a proceeding under Title VII.  See EEOC v. Total Sys. Servs., 221 F.3d 1171, 1176 (11th Cir. 2000).

To find shelter under the opposition clause, the manner in which the employee chooses to oppose an unlawful employment practice must be reasonable and not disruptive.  See Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1390 (8th Cir. 1988).  Reasonableness is measured by a balancing test which limits protection for the wide range of activities covered by the opposition clause.  The First Circuit Court of Appeals explained that this test "balance[s] the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel."  Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222, 230 (1st Cir. 1976).  See also Laughlin v. Metropolitan Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998);  Kavanaugh v. Sperry Univac, 511 F. Supp. 705, 707 (N.D. Ill. 1981). Additionally, employees claiming opposition clause protection must have a good faith and objectively reasonable belief that the practices opposed are unlawful. Under that standard, the conduct opposed does not actually have to be unlawful. But courts evaluate employees' reasonableness by examining the

CIVIL NO. 03-1079 (RLA)                                                Page 11

existing substantive law.  See Clark County, 532 U.S. at 270-71
(2001).  In this respect, "[i]t is critical to emphasize that a
plaintiff's burden under this standard has both a subjective and an
objective component. A plaintiff must not only show that [s]he
**subjectively** (that is, in good faith) believed that [her] employer
was engaged in unlawful employment practices, but also that [her]
belief was **objectively** reasonable in light of the facts and record
presented." Little v. United Techs., Carrier Transicold Div., 103
F.3d 956, 960 (11th Cir. 1997) (emphasis in the original).

        "In a generic sense, plaintiff's right to . . . file a civil
action is protected by Title VII.  However, the safeguards afforded
by the statute are not unlimited in application." Kavanaugh, 511 F.
Supp. at 706.  In the particular circumstances of this case, the
Court finds that plaintiff's filing and successive amended filings of
discrimination lawsuits against JANSSEN are unreasonable in light of
the facts and record presented, and thus not entitled to section
704(a) protection. The Court agrees with defendant that plaintiff
does not have a federally protected right to unbridledly send
employment applications to her former employer and sue for
retaliation repeatedly thereafter when no offer of employment is
forthcoming. Plaintiff has not proffered any evidence, other than
the sole absence of an offer of employment, to carry her burden of
proving she held a good faith reasonable belief that JANSSEN's
failure to hire her was in retaliation for her Caguas Court

CIVIL NO. 03-1079 (RLA)                                         Page 12

complaint.[2]  There is no evidence of plaintiff's state of mind, or the reasons behind the same, nor anything to suggest that any inference in her favor would be reasonable under the circumstances.  Thus, inasmuch as the only thing that could have precluded plaintiff from concluding that she was the subject of retaliation was an offer of employment, her belief is unreasonable as a matter of law.  It is clear to this Court that Title VII's retaliation provision was not meant to tie the hands of employers in this manner.  See Hochstadt, 545 F.2d at 230-33 (1st Cir. 1976); Kavanaugh, 511 F. Supp. at 707 (finding Title VII was not designed to licence endless and essentially frivolous and harassing claims by an employee against his former employer).

     The Court further notes that plaintiff has failed to carry her burden of proving causation as an element of her prima facie case. In the context of retaliation claims, before the employer has proffered a legitimate, non-discriminatory reason for the adverse employment action, the employee has a minimal burden of alleging evidence sufficient to raise the inference that the protected activity and the adverse action were not wholly unrelated and requiring the Court to draw reasonable inferences therefrom.  See Collins v. N.Y. City Transit Auth., 305 F.3d 113, 118 (2nd Cir. 2002); Nguyen v. City of Cleveland, 229 F.3d 559, 566 (6th Cir. 2000).  No such inferences arise in this case.

---

     [2]  The Caguas Court complaint is also premised in part on a failure to hire allegation.

CIVIL NO. 03-1079 (RLA)                                    **Page 13**

---

In the context of discriminatory failure to hire claims, the plaintiff must come forward with evidence of a specific vacant position to which she applied and for which she was qualified. <u>See Brown v. Coach Stores, Inc.</u>, 163 F.3d 706, 711-12 (2nd Cir. 1998); <u>Weber v. American Express Co.</u>, 994 F.2d 513,516 (8th Cir. 1993); <u>Rush v. McDonald's Corp.</u>, 966 F.2d 1104, 1118 (7th Cir. 1992); <u>Chavez v. Tempe Union High School Dist.</u>, 565 F.2d 1087, 1091-92 (9th Cir. 1977). In this case, plaintiff's letters list several general categories of employment but altogether fail to specify that she sought consideration for the MPF position she now claims she was denied. Notably, it is uncontested that plaintiff sent her résumé and letters seeking employment before the MPF position had been published to external candidates or was even available to them, as per JANSSEN's company policy. Hence, plaintiff's letters cannot reasonably be deemed applications to be considered for that position. More importantly, inasmuch as the position was at the time unavailable to *all* external candidates, plaintiff has failed to carry her burden of establishing that the MPF position was not available to her *because of* the protected activity.

In this regard, the Court finds that plaintiff has failed to carry her burden of establishing prima facie causation. Accordingly, we hereby GRANT defendant's motion for summary judgment with regard to the retaliation claims.

CIVIL NO. 03-1079 (RLA)                                        Page 14

---

## THE ADA CLAIM

The Americans with Disabilities Act ("ADA") prohibits discrimination "against a qualified individual with a disability." 42 U.S.C. §12112(a).   To this effect, the term "qualified individual" refers to "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions [of the job]." 42 U.S.C. §12111(8).  Furthermore, "the ADA prohibits [employers] from 'discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" Katz v. City Metal Co., 87 F.3d 26, 30 (1st Cir. 1996).  See also 42 U.S.C. §12112(a).

In order to establish a prima facie case of disability discrimination plaintiff must show that she (i) is a "qualified individual" with a disability within the meaning of the Act; (ii) is able to perform the essential functions of the job, with or without a reasonable accommodation; (iii) was subject to an adverse employment action by an employer who is subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result.  See Katz, 87 F.3d at 30; Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996).  See also Dichner v. Liberty Travel, 141 F.3d 24,

CIVIL NO. 03-1079 (RLA)                                           Page 15

30 (1st Cir. 1998); Acevedo-Lopez v. Police Dep't of P.R., 81 F. Supp.2d 293 (D.P.R. 1999).

The first prong of plaintiff's prima facie case requires that plaintiff set forth enough evidence from which a reasonable jury could conclude that she is disabled within the meaning of the Act. "The word 'disability' is a term of art in the ADA context." Gillen v. Fallon Ambulance Serv., 283 F.3d 11, 21 (1st Cir. 2002). The statute offers three alternative definitions for the term: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. §12102(2).

VELEZ argues that she is disabled under either the first or the third definition of disability. According to the Amended Complaint, plaintiff was diagnosed as suffering from bipolarity, a condition which affects her ability to perform activities such as living, working and caring for herself and, additionally, that JANSSEN perceived her as disabled. See Amended Complaint at ¶ 6.2 and 8.2. However, plaintiff admitted during her deposition that, at all times relevant to the complaint, she was not disabled within the meaning of the Act, inasmuch as she was not "substantially limited in any major life activity." During her deposition VELEZ expressly admitted that her condition does not affect her daily activities and that she can perform all types of activities, as everyone else, including caring for herself and going to the church, gym, and shopping mall. There

CIVIL NO. 03-1079 (RLA)                                          Page 16

is nothing VELEZ cannot do because of the fact that she has a bipolar diagnosis, as she feels that the condition does not interfere with any aspect of her work or outside, social, activities.   In the context of the ADA, being disabled is a threshold requirement which plaintiff has thus failed to satisfy.   See Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1454 (7th Cir. 1995).

There is another factor that must be considered when analyzing whether an individual meets the ADA's definition of "disabled."  The United States Supreme Court held in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) that the effects of mitigating measures must be considered in determining whether an individual's impairment qualifies as a disability under the ADA.  See Id. at 482.  See also Murphy v. UPS, 527 U.S. 516 (1999).  If an individual takes measures "to correct for, or mitigate a physical or mental impairment, the effects of those measures – both positive and negative – must be taken into account when judging whether that person is 'substantially limited' in a major life activity." Sutton 527 U.S. at 482. "[D]isability exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could' or 'would' be substantially limiting if mitigating measures were not taken.  A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." Id.  Thus, the Court finds that plaintiff's own admissions in her deposition preclude her

from establishing she is disabled under the ADA's first definition of disability.

Alternatively, VELEZ argues that the managerial personnel at JANSSEN "regarded her" as substantially limited in performing her major life activities, thus invoking subsection (C) of ADA's definition of disability.  Under subsection (C) of 42 U.S.C. §12102(2), an individual who is "regarded as" having a disability is "disabled" within the meaning of the ADA and can invoke the statute's protective mantle.  <u>See</u> <u>Sutton</u>, 527 U.S. at 489.  "The 'regarded as' prong of the ADA's disability definition is intended to provide a remedy for discrimination based on misperceptions about the abilities of impaired persons."  <u>Krocka v. City of Chicago</u>, 203 F.3d 507, 513-514.  These misperceptions may take the form of believing "'either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment, when, in fact, the impairment is not so limiting'."  <u>Id.</u> (quoting <u>Sutton</u>, 527 U.S. at 489).

To establish a "regarded as" claim under the ADA, VELEZ must show that JANSSEN perceived her as actually disabled.  <u>See</u> <u>Kellogg v. Union Pac. R.R.</u>, 233 F.3d 1083, 1089 (8th Cir. 2000) (quoting <u>Murphy</u>, 527 U.S. at 521-22) (stating that a "regarded as" disabled claim requires employee to show that he or she "[h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation.").  VELEZ bases her contention that JANSSEN regarded her

as disabled on three events:  First, VELEZ alleges that prior to her lay-off in December of 1998, RODRIGUEZ, Human Resources Manager at the time, told her during a discussion of an unsatisfactory evaluation, that she did not care if VELEZ had to take pills. Plaintiff also alleges that KIMBARIS, a supervisor at the Chemical Plant, mocked her by saying "She's crazy," sometime in 1998.  VELEZ complains that these incidents, which happened prior to her departure from JANSSEN in December of 1998, were the reasons why she was not offered a position in August of 2001, and that they are evidence of JANSSEN's perception of her as disabled.

The Court finds VELEZ' arguments totally unconvincing, inasmuch as RODRIGUEZ' and KIMBARIS' alleged comments were made almost three (3) years before the employment decision subject of this present action.  VELEZ has not pointed out any incident or facts to overcome the temporal stretch between the time the alleged comments were made and the time of the decision complained of herein.  See Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001); McMillan v. Massachusetts SPCA, 140 F.3d 288, 300 (1st Cir. 1998).

Furthermore, it is uncontested that the person who took the employment decision of which plaintiff complains was OTERO. Therefore, the referenced comments, at most, constitute nothing but stray remarks; that is, statements made by non-decision makers, unrelated to the decisional process at issue and which bear no legal significance to the instant controversy.  See González v. El Día, Inc., 304 F.3d 63, 69-70 (1st Cir. 2002); Torres v. Cooperativa de

Seguros de Vida de P.R., 260 F. Supp.2d 365, 373 (D.P.R. 2003) (Id.)
(quoting Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st
Cir. 1996)).

        VELEZ also argues that JANSSEN regarded her as disabled because
the Company allegedly knew she was under psychiatric treatment.
However, VELEZ does not provide any verifiable basis for this
allegation, other than pure speculation regarding JANSSEN's alleged
ability to receive information about her medical condition through
the doctors that were treating her and the medical information from
the health insurance plan.  However, VELEZ' assumption is not enough
to conclude that JANSSEN knew of her alleged disability.  There is no
evidence that would justify imputing plaintiff's physician's
knowledge to JANSSEN.  See Schuler v. SuperValu, Inc., 336 F.3d 702,
705 (8th Cir. 2003) (finding medical group's knowledge of plaintiff's
condition not imputable to employer, even though employer hired them
to conduct pre-employment examination of plaintiff).  In fact, to
conclude that JANSSEN learned about plaintiff's disability through
her medical records would require a finding that the health care
providers and defendant breached various local and federal laws which
penalize the unauthorized disclosure of this kind of medical
information.  Plaintiff  provided no evidence that such violations
occurred in this case and this Court will not venture to make such a
finding.

        Finally, VELEZ alleges that JANSSEN perceived her as disabled as
a  result  of  seeing  her  medical  records  during  the  discovery

proceedings in the pending Caguas Court lawsuit. However, plaintiff's medical records do not make any reference to a diagnosis of bipolarity until November 12, 2002, that is, fifteen (15) months after JANSSEN's refusal to consider plaintiff for a position.

Moreover, the only two persons which VELEZ identifies as having made comments she argues constitute evidence of discrimination, and who could have regarded her as disabled, did not take part in the decisionmaking process subject of these proceedings, and were not even working for JANSSEN in August 2001, when she applied for the Manufacturing Process Facilitator position.

Based on the foregoing, this Court finds that plaintiff has failed to put forth enough evidence from which a reasonable person could conclude that she is disabled within the meaning of the Act, thus requiring the dismissal with prejudice of plaintiff's disability claim under the ADA.   Accordingly JANSSEN's motion for summary judgment is GRANTED as concerns the ADA claims.

### THE SUPPLEMENTAL CLAIMS

Plaintiff's opposition did not address defendant's summary judgment contentions regarding any of her supplemental claims.   Thus, her objections to their dismissal are deemed waived.   The Court determines that the absences of prima facie causation precludes plaintiff's claims under Act 115.   The Court also finds that plaintiff's admission during her deposition regarding the absence of a substantial limitation on a major life activity preclude her Act 44 claim.   Additionally, the Court holds that plaintiff has failed to

**CIVIL NO. 03-1079 (RLA)**                                      **Page 21**

state a claim under Act 100 inasmuch as her allegations in the instant case do not touch upon any of that statute's protected categories.   Finally, with respect to plaintiff's constitutional claim, the conduct complained of does not rise to the level of an actionable conduct as a matter of law.   Accordingly, inasmuch as the conduct complained of does not violate any of the applicable employment laws it cannot alternatively constitute a tort under Articles 1802 and 1803 of the Puerto Rico Civil Code.

### CONCLUSION

Based on the foregoing, defendant's Motion for Summary Judgment is hereby GRANTED in its entirety and plaintiff's retaliation and ADA claims, as well as her supplemental claims under Act 115, Act 44, Act 100, Article II, sections 1 and 8 of the Puerto Rico Constitution and Articles 1802 and 1803 of the Puerto Rico Civil Code are hereby **DISMISSED.**

Judgment to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 22nd day of September, 2005.

                                       S/Raymond L. Acosta
                                     RAYMOND L. ACOSTA
                              United States District Judge